IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER LOVETTE-CEPHUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 2118 |
| | ) |
| VILLAGE OF PARK FOREST, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Village of Park Forest's (Village) motion for summary judgment. For the reasons stated below, the Village's motion for summary judgment is granted.

**BACKGROUND**

Plaintiff Jennifer Lovette-Cephus (Lovette-Cephus) alleges that she is African-American and that on or about June 7, 2011, she filed an application for a business license from the Village. Lovette-Cephus alleges that she was treated unequally by the Village compared to similarly situated non African-American individuals with regard to the application process. Lovette-Cephus further alleges that she met all of the Village's application requirements. Lovette-Cephus claims

1

that her business license was denied due to her race and the Village's alleged "ill-will" towards her.

Lovette-Cephus brought the instant action and includes in her complaint claims brought pursuant to 42 U.S.C. § 1983 (Section 1983) alleging race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV (Count I).  Lovette-Cephus named both the Village and the Village of Park Forest Building Department (Village Building Department) as defendants in her complaint.  On May 21, 2013, Lovette-Cephus voluntarily dismissed all claims brought against the Village Building Department.  The Village has filed the instant motion for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).  A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

The Village contends that Lovette-Cephus has failed to point to sufficient evidence to meet the required *Monell* standards for recovery from a municipal entity, and that Lovette-Cephus' equal protection claim is without merit. (SJ Mot. 2). Lovette-Cephus has not named any specific individuals or Village employees as defendants. (Compl. 1).

I. *Monell* standard requirements

The Village argues that it is not liable under Section 1983 because Lovette-Cephus has not satisfied the standards articulated in *Monell* for subjecting a municipal entity to liability under Section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694-95 (1978). A municipal entity can be held liable under Section

1983 only when the municipal entity "violates constitutional rights via an official policy or custom." *Wragg v. Village of Thornton*, 604 F.3d 464, 467-68 (7th Cir. 2010). For a Section 1983 *Monell* claim, a plaintiff must "show that his constitutional injury was caused 'by (1) the enforcement of an express policy of the [municipal entity], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority.'" *Id.* (quoting *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001)).

A. Express Policy

The Village argues that Lovette-Cephus fails to point to sufficient evidence to show that there was an express policy that the Village code requirements were selectively enforced against non African-American applicants interested in opening a food-based business. (SJ Mem. 8). It is undisputed that Lovette-Cephus wished to open a store-front bakery at 261 Cunningham Drive (261 Cunningham) within the downtown area of the Village. (R SF Par. 12). It is also undisputed that in June 2011, Lovette-Cephus was aware that a triple-compartment sink would be necessary for the operation of her bakery and accompanying construction. (R SF Par. 14). It is further undisputed that in December 2011, Monica Delord (Delord), Administrative

4

Assistant of Village Business Licensing, advised Lovette-Cephus of the Fire Building and Health Departments' requirements that would need to be met prior to the pre-inspections. (R SF Par. 25).

In addition, it is undisputed that on January 27, 2012, the Village Health Department issued a formal letter to Lovette-Cephus advising her that a three-compartment sink and hand-washing sink would be required by her commercial business, pursuant to the Illinois Public Health Administrative Code. (R SF Par. 32). The undisputed facts show that even though there was only one sink on the premises, Lovette-Cephus thought that the bathroom sink at 261 Cunningham would be sufficient to satisfy the Village Health Department's sanitation requirements. (R SF Par. 34).

The parties do not dispute that Tina Anderson (Anderson), a Caucasian resident of the Village, was also advised by the Village in January 2011 of several health and safety requirements when Anderson applied to convert her garage into a commercial kitchen for baked goods. (R SF Par. 45-46, 49). The undisputed facts also show that Anderson gave up on her plans to convert her garage into a commercial kitchen due to the required expenses and decided to bake off-site in Chicago. (R SF Par. 47). In addition, Lovette-Cephus admits that, other than Anderson, she is unaware of any other bakeries located within the Village that have

non African-American owners or operators. (R SF Par. 40). Further, Lovette-Cephus does not claim that the Village had an express business licensing policy which was discriminatory, but merely asserts that she "did not feel as though these codes applied to her proposed business." (R SF Par. 32). Therefore, based on the above, Lovette-Cephus has not pointed to sufficient evidence to show the existence of an express municipal policy of the Village which discriminates against African-American business license applicants.

### B. Widespread Practice

The Village argues that Lovette-Cephus fails to point to sufficient evidence to establish a custom or widespread practice that the Village discriminated against African-American business license applicants. (SJ Mem. 8). The Village contends that the record shows that "the Village *welcomed* [Lovette-Cephus] and her proposed bakery into its largely vacant downtown district which was in need of a bakery and the resultant tax revenues." (SJ Mem. 8-9)(emphasis added). It is undisputed that Lovette-Cephus was advised by her realtor that the Village's downtown area was largely vacant and that the Village was looking for a bakery-coffee shop. (R SF Par. 13). It is also undisputed that Lovette-Cephus' own business plan stated that the type of business she offered was being sought after by the Village in that area for over

6

two years and that the location of her proposed bakery "is a benefit because of the surrounding area, no competitors for miles." (R SF Par. 43-44). It is further undisputed that on June 13, 2011, Lovette-Cephus met with several Village officials at her proposed location to discuss her proposed operation of a bakery at that location. (R SF Par. 15). The parties do not dispute that following the inspection, the Village department "heads in attendance" told Lovette-Cephus that she could operate her bakery out of the proposed location. (R SF Par. 16).

In addition, it is undisputed that in October 2011, Hildy Kingma (Kingma), the Village's Director of Economic Development and Planning, advised Lovette-Cephus via e-mail that the Village was willing to pay one-half of the cost associated with signage for her business and also offered Lovette-Cephus some marketing strategies. (R SF Par. 18). It is also undisputed that when Lovette-Cephus asked Kingma about financial assistance for the necessary sink installation, she was correctly advised that she did not qualify under the Village requirements since she was a tenant and not a property owner. (R SF Par. 22).

It is undisputed that the same month, Lovette-Cephus e-mailed her landlord at 261 Cunningham to inform him that she was having trouble finding a general contractor to supervise the proposed construction. (R SF Par. 19). It is also undisputed that in November 2011, Lovette-Cephus communicated to DeLord

7

regarding the difficulties of her continued search for a general contractor who would take the job. (R SF Par. 24). Lovette-Cephus admits that she did not proceed with the construction aspects of 261 Cunningham due to the expense involved. (R SF Par. 20).

Even though Lovette-Cephus' complaint alleges that her business license application was denied by the Village, Lovette-Cephus admits that she was never informed by a representative of the Village, either orally or in writing, that her June 7, 2011 business license application was denied. (R SF Par. 26). Moreover, Lovette-Cephus does not argue that there was a general custom or practice which either imposed extra requirements or prevented her from obtaining a business license. Therefore, based on the above, Lovette-Cephus has not pointed to sufficient evidence to show the existence of a racially discriminatory widespread custom or practice behind the Village's business licensing process.

### C. Policymaking Authority

The Village argues that Lovette-Cephus fails to point to sufficient evidence to suggest a constitutional violation by official policymakers of the Village. (SJ Mem. 9-10). To establish municipal liability under this third factor, a plaintiff must "present evidence that his constitutional injury was caused by an individual with

final policymaking authority with respect to the subject matter in question." *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009). Thus, Lovette-Cephus must show that an individual with final policymaking authority with respect to the Village's business licensing application process caused her a constitutional deprivation.

The issue of whether an entity has final policymaking authority is a question of state or local law. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011)(citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Generally, for purposes of Section 1983, "the policymaking authority in the city structure will be the city council, or . . . the Board of Trustees." *Rasche v. Village of Beecher*, 336 F.3d 588, 601 (7th Cir. 2003). However, final policymaking authority "may be granted directly by statute or delegated or ratified by an official having policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999); *see also Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992)(defining "policy" as either "legislative power" over a jurisdiction or "executive power" to take final action in the name of the jurisdiction).

To subject a municipality to Section 1983 liability, the Seventh Circuit has distinguished a "final policymaker" as an "authority, under state or local law, to *set* policy—i.e., to 'adopt rules for the conduct of government,'" rather than an official

who "merely possesses 'authority to *implement* pre-existing rules.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 740 (7th Cir. 2008)(quoting *Killinger v. Johnson*, 389 F.3d 765, 771-72 (7th Cir.2004)(emphasis added)); *see Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001)(stating that for purposes of liability under Section 1983, "[a]n executive official who rather than making policy merely implements legislative policy acts merely as a delegate of the legislature, and his act is therefore not the act of the municipality itself")(citing *Auriemma*, 957 F.2d at 397). Thus, a person with solely executive power does not have policymaking authority under Section 1983. *Rasche*, 336 F.3d at 601 (7th Cir. 2003).

Lovette-Cephus does not name the Village's city council or its Board of Trustees as defendants in her complaint. (Compl. 1). Nor does she allege any involvement by either entity relating to the claims in her complaint. Rather, Lovette-Cephus claims that three of the Village's employees, acting in accordance with their roles, "all constitute[d] final policy makers under Illinois law." (R SJ Mem. 7). Lovette-Cephus fails to identify a state or local law which endows these alleged individuals with final policymaking authority. However, the court may look to other factors in determining whether an individual is considered to have policymaking authority "on any *particular* policy decision." *Wragg*, 604 F.3d at 468 (emphasis in

original). The factors to determine whether an official is considered a final decisionmaker include: "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009). Additionally, in order to establish a policy, the decision "to follow a course of action must be 'deliberate.'" *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 665-66 (7th Cir. 2000)(quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986)).

While it is undisputed that in October 2011, Lovette-Cephus e-mailed John Ostenburg, the Village President, about the difficulties she was having in meeting the requirements for the opening of her proposed business, Lovette-Cephus admits that she did not reference discrimination then since she did not "feel it at the time." (R SF Par. 23). Lovette-Cephus further concedes that she "did not feel as though she was being discriminated against by the Village at least as of January 31, 2012." (R SF Par. 35). As previously noted, Lovette-Cephus admits that her June 7, 2011 business license application was never actually denied, (R SF Par. 26), yet on January 17, 2012, Lovette-Cephus filed an amended business license application. (R SF Par. 27). It is undisputed that on Lovette-Cephus' amended business license

application, she attached a lease to allow her to bake off-site at Southland Caterers (Southland), which was a suggestion made by the Village in response to her financial difficulties. (R SF Par. 27). It is also undisputed that Lovette-Cephus's January 17, 2012 business license application included a written explanation of how she planned on transporting food from Southland to the storefront bakery. (R SF Par. 28).

It is further undisputed that DeLord informed Lovette-Cephus that Jenise Ervin (Ervin), Director of the Village Health Department, expressed concerns regarding Lovette-Cephus' January 17, 2012 business license application. (R SF Par. 29). It is undisputed that on January 26, 2012, Ervin, who is also an African-American, advised Lovette-Cephus of these concerns. (R SF Par. 30). Lovette-Cephus admits that "the main point of contention at this point in time was requiring that [Lovette-Cephus] install a three-compartment sink and hand-washing sink." (R SF Par. 31). Lovette-Cephus also admits that on January 31, 2012, she advised her landlord that "she was abandoning her plans to open her bakery due to the cost for the installation of the three-compartment sink and the hand sink" which she could not afford. (R SF Par. 33). It is also undisputed that in March 2013, Lovette-Cephus began the process of opening her bakery in her hometown of Hammond, Indiana. (R SF Par. 57). Finally, Lovette-Cephus admits that she never received a response from the Village, either orally or in writing, regarding her amended January 31, 2012

business license application. (R SF Par. 37).

Lovette-Cephus fails to demonstrate that either DeLord, Ervin, or the Village President had final policymaking authority with respect to the Village's business licensing process. *See Vela.*, 218 F.3d at 665-66 (addressing plaintiff's failure to "demonstrate[] that Illinois law grants final policy making authority to either of these officers nor any delegation of such authority by the Village board"); *see also Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993)(holding that "a single isolated incident of wrongdoing by a non-policymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct").

Although Lovette-Cephus mentions certain "road blocks" she encountered, (R SJ Mem. 8), she has failed to demonstrate that the purported "road blocks" were other than the necessary health and safety requirements for all potential business licensees. Lovette-Cephus further claims that the employees she has named are final policymakers because their decisions "were not supervised by any individual." (R SJ Mem. 8). However, the "mere decision to allow an official discretion to make certain decisions is insufficient to give rise to municipal liability." *Kujawski*, 183 F.3d at 736-37; *see Milestone*, 665 F.3d at 780 (reasoning that "[n]ot every municipal official with discretion is a final policymaker" since "authority to make final policy

13

in a given area requires more than mere discretion to act")(citing *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009)); *see also Waters*, 580 F.3d at 585 (recognizing that "*Monell* liability is not a form of respondeat superior")(citing *Valentino*, 575 F.3d at 674-75). Therefore, based on the above, Lovette-Cephus has not pointed to sufficient evidence to show that the individuals involved in decisions relating to her business license had final policymaking authority within the Village.

Contrary to the original allegations in Lovette-Cephus' complaint of being denied a business license due to her race, Lovette-Cephus later admits that neither her June 7, 2011 nor her amended January 17, 2012 business license application was ever denied. Lovette-Cephus admits that she made the decision herself to abandon her proposed bakery due to her inability to meet the expenses involved in operating the business within the Village's code requirements. Lovette-Cephus has not pointed to sufficient evidence to suggest a policy, practice, or custom for a *Monell* claim or facts that would indicate that someone with policymaking authority caused a constitutional deprivation. Therefore, based on the above, Lovette-Cephus' municipal liability argument fails.

II. Class-of-One Equal Protection Claim

Lovette-Cephus indicates that she is also pursuing an equal protection claim under the "class-of-one" theory. (R SJ Mem. 9). To allege a class-of-one equal protection claim, a plaintiff must establish: (1) that "a state actor has intentionally treated him differently than others similarly situated," and (2) that "there is no rational basis for the difference in treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)(citing *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir.2009)). Thus, in class-of-one cases, the plaintiff "does not claim to be a member of a class that the defendant discriminates against, but argues only that he is being treated arbitrarily worse than some one or ones identically situated to him." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005); *see United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)(stating that "a class-of-one equal protection challenge asserts that an individual has been 'irrationally singled out,' without regard for any group affiliation, for discriminatory treatment")(quoting *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008)).

A. Similarly Situated

Lovette-Cephus claims that Anderson is a similarly situated individual. (R SJ Mem. 9). For purposes of a class-of-one equal protection claim, a similarly situated person "alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in *all* material respects." *Reget*, 595 F.3d at 695 (citing

15

*Srail*, 588 F.3d at 945)(emphasis added); *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir.2005). Accordingly, the Seventh Circuit has imposed on plaintiffs "a very significant burden" with respect to establishing someone who is similarly situated in the context of class-of-one equal protection claims. *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 283 (7th Cir. 2003); *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1003 (7th Cir. 2004).

It is undisputed that in March 2012, Lovette-Cephus felt that she was being discriminated against when she learned that Anderson "was allowed to bake off-site at a commercial kitchen and sell baked goods from her home in Park Forest." (R SF Par. 38). It is also undisputed that in November 2010, unlike Lovette-Cephus, Anderson initially proposed to convert her garage into a commercial kitchen. (R SF Par. 45). It is further undisputed that in January 2011, Anderson had been advised by the Village that such a conversion would require several health and safety standards to be met before its approval. (R SF Par. 46). The undisputed facts show that, unlike Lovette-Cephus, Anderson had never requested that the Village permit her bakery, Aunt Tee's, to conduct business "from a fixed storefront location" within the Village. (R SF Par. 55). Lovette-Cephus admits that Anderson "did not operate a storefront. . ." (R SF Par. 39).

In this case, Lovette-Cephus fails to meet the high burden of demonstrating that Anderson should be considered a similarly situated person. Lovette-Cephus

16

admits that the "main point of contention" during her business license application process was the Village requirement for her to "install a three-compartment sink and hand-washing sink." (R SF Par. 31). The undisputed facts show that although Anderson originally considered converting her garage into a commercial kitchen, she abandoned that plan due to the significant costs. Lovette-Cephus fails to establish that she and Anderson were significantly similar with respect to their business license applications. *See Bell v. Duperrault*, 367 F.3d 703, 708-09 (7th Cir. 2004)(finding that individuals were not similarly situated in a "class of one" equal protection case where individuals submitted applications at different times or with different requests); *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).

Moreover, the different requirements due to the facts may at times result in "uneven enforcement," which is not sufficient to give rise to a class-of-one equal protection claim. *See Tuffendsam v. Dearborn Cnty. Bd. of Health*, 385 F.3d 1124, 1128 (7th Cir. 2004)(stating that "[t]he Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all")(quoting *Hameetman v. City of Chicago,* 776 F.2d 636, 641 (7th Cir. 1985)). The record clearly shows that Lovette-Cephus and Anderson were not similarly situated. The record also indicates that Anderson was treated similarly since the Village imposed requirements which she could not meet,

until Anderson eventually elected to bake off-site. Therefore, based on the above, Lovette-Cephus has failed to establish that she was treated differently than a similarly situated person. *See Reget*, 595 F.3d 691 at 695 (stating that although it is not a "precise formula," it is "clear that similarly situated individuals must be very similar indeed")(citing *McDonald*, 371 F.3d at 1002).

### B. Rational Basis

Lovette-Cephus has failed to point to a similarly situated individual, but even if she had done so, her claims that there was no rational basis for the Village's actions fail. A class-of-one claim is "classic[ally]" illustrated where "a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'" *Lauth*, 424 F.3d at 633. Since "[t]his improper motive is usually covert, . . . courts first look to eliminate all proper motives." *Id.* Additionally, since plaintiff has a heightened burden, the motives can only be "irrational and improper" if "there was no rational basis for the treatment of the plaintiff." *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000)); *see Bell*, 367 F.3d at 708-09 (7th Cir. 2004)(stating that it is "not enough to survive a summary judgment motion" for defendant to act in a way that plaintiff "believes to be ineffective or even destructive"). Therefore, Lovette-Cephus must "eliminate any reasonably conceivable state of facts that could provide

a rational basis for the classification." *Bell*, 367 F.3d at 708 (referencing *Discovery House,* 319 F.3d at 282-83).

Although Lovette-Cephus claims that the Village's actions in placing requirements on her were "motivated by ill-will," (Compl. 3), the record does not support this contention. Lovette-Cephus fails to point to sufficient evidence that the Village had no rational basis for said requirements. The undisputed facts show that the Village Health Department advised Lovette-Cephus of the separate sink requirements pursuant to the Illinois Public Health Administrative Code. (R SF Par. 32). The Village clearly had a rational reason to ensure that health and safety standards are met by the businesses operating in the Village. Thus, based on the above, Lovette-Cephus has failed to eliminate any rational basis for the Village's actions. Therefore, based on all of the above, the Village's motion for summary judgment is granted.

## CONCLUSION

Based on the foregoing analysis, the Village's motion for summary judgment is granted.

                                          _____
                                          Samuel Der-Yeghiayan
                                          United States District Court Judge

Dated: March 25, 2014